IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BECKY STEPTOE,** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| vs. | : | NO. 14-5574 |
| | : | |
| **BEST BUY IN TOWN, INC., et al.,** | : | |
| **Defendants** | : | |

**M E M O R A N D U M**

**STENGEL, J.**                                                                             **July 21, 2016**

Plaintiff Becky Steptoe brings this action against Defendant Best Buy In Town, Inc., Defendant John Doe Tow Company, and two John Doe individual defendants, stemming from the purchase and ultimate repossession of a used vehicle. In her second amended complaint, Ms. Steptoe alleges a violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*; a violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa.C.S. § 201-1, *et seq.*; a violation of the UCC; and a violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* She also alleges state law claims of fraud and conversion.

Ms. Steptoe has filed a motion for partial summary judgment on her TILA claim, and Defendant Best Buy has responded. For the following reasons, I will deny the motion in its entirety.

**I. BACKGROUND**

On August 5, 2014, Ms. Steptoe visited Best Buy's car dealership on Erie Avenue in Philadelphia, to purchase a larger vehicle to transport her children. She traded in a

2010 Nissan Altima and financed a 2008 Nissan Rogue. The parties signed a Buyers Order and a Retail Installment Sales Contract, which Ms. Steptoe now alleges were fraudulent. These documents indicate that the terms of the deal included $3,000 for trade-in lien/payoff, $8,000 trade-in value for the Altima, and a deposit of $857.40. Ms. Steptoe insists that, in reality: (1) the defendant gave Ms. Steptoe a check for $3,000 despite there being no lien to pay off; and (2) Ms. Steptoe did not put a deposit down. She further alleges that, "Best Buy assigned a trade value of $11,000 to plaintiff's Altima and then artificially divided it into $3,000 cash included in the vehicle's financing and $8,000 trade-in value not included in the vehicle's financing." See Second Am.Compl. ¶ 21. The defendant then assigned the loan to United Auto Credit ("UAC").[1] After the sale, Defendant Best Buy allegedly asked Ms. Steptoe to lie to UAC, and say that she had paid an $857.40 deposit. It is undisputed that, although she took possession of the 2008 Nissan Rogue, received a check for $3,000 as a lien payoff, and cashed that check, Ms. Steptoe failed to make even one of the monthly payments on the loan.

Ms. Steptoe alleges that the vehicle she purchased had numerous defects which required repairs that Ms. Steptoe could not afford. When UAC contacted Ms. Steptoe about payment, she informed them that she had been tricked into buying a defective car and that she had not paid any deposit. Ms. Steptoe claims that Defendant Best Buy was attempting to disguise the predatory lending being perpetrated against her, i.e., Best Buy

---

[1] In her previous complaints in this case, Ms. Steptoe included claims against UAC. On January 16, 2015, she filed a praecipe to dismiss UAC as a defendant in accordance with Rule 41(a) of the Federal Rules of Civil Procedure. See Document #9. I approved the dismissal on January 22, 2015. See Document #11.

inflated the amount subject to financing which increased the interest to UAC and rendered the deal more attractive for purchase.

On September 29, 2014, at 2 o'clock in the afternoon, Ms. Steptoe's daughter heard chain-like noises outside of their home.  Ms. Steptoe looked outside and saw her car hooked to a tow truck with four men surrounding it.  She asked them what they were doing and one of the gentlemen rudely yelled, "We're from United Auto to take this car because you didn't make the first payment on it.  You need to get your tag off of it now and give me your keys."  The men attempted to stop Ms. Steptoe's daughter from getting some personal belongings from the car.  After refusing to give Ms. Steptoe any paper work authorizing the repossession, the men drove off with the vehicle.

On October 1, 2014, Ms. Steptoe was notified by Defendant Best Buy that it had repossessed the vehicle.  On October 9, 2014, UAC confirmed that it had reassigned the loan to Best Buy.  The plaintiff says that at the time Defendant Best Buy repossessed the vehicle, it could not have had any legal right or interest in it because the reassignment did not occur for another week.  This allegation is belied by the plaintiff's own evidence of a letter dated September 24, 2014 in which UAC informs Defendant Best Buy that their Agreement required Defendant Best Buy to repurchase Ms. Steptoe's contract immediately because UAC had not received the first payment due from Ms. Steptoe.  See Document #28-4 at 4.  Thus, Defendant Best Buy had the legal right to repossess the vehicle on the date it was taken away.

Ms. Steptoe filed this second amended complaint against the defendants seeking statutory damages, actual damages for emotional distress, UCC damages, treble damages,

3

and attorney's fees and costs under the UTPCPL; actual damages for loss of the use and value of the trade vehicle, and punitive damages for conversion of the trade vehicle.

## II. STANDARD OF REVIEW

A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers or other materials. FED. R. CIV. P. 56(c)(1)(A). That is, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that

4

party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. at 322. Under Rule 56, the court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson v. Liberty Lobby, Inc., 477 U.S. at 255. The court must decide not whether the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. Id. at 252. If the non-moving party has exceeded the mere scintilla of evidence threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### III. DISCUSSION

Ms. Steptoe moved for summary judgment on Count I which brings a claim for a violation of the TILA. She argues that the amount financed and the finance charges surrounding the purchase of the used vehicle were inaccurately disclosed by Defendant Best Buy. Specifically, Ms. Steptoe claims that Defendant Best Buy: (1) included a $3,000 lien payoff on the documents yet there was no lien on her previous vehicle; (2) indicated on the documents that the trade-in value of her Altima was $8,000, when it was really $11,000; and (3) indicated that Ms. Steptoe paid a deposit of $857.40, when in fact she paid no deposit. Ms. Steptoe further argues that because the TILA is a strict liability statute to be construed liberally in favor of the consumer, she is entitled to damages as a matter of law. I do not agree.

Through the TILA, Congress sought to remedy the "divergent and often fraudulent practices by which credit customers were apprised of the terms of the credit extended to them." Johnson v. McCrackin-Sturman Ford, Inc., 527 F.2d 257, 262 (3d Cir. 1975). Indeed, the congressionally stated purpose of the TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him." See 15 U.S.C. § 1601(a) ("Congress finds that economic stabilization would be enhanced and the competition among the various financial institutions and other firms engaged in the extension of consumer credit would be strengthened by the informed use of credit"). The TILA, as a remedial statute which is designed to balance the scales "thought to be weighed in favor of lenders," is to be liberally construed in favor of borrowers. Smith v. Fidelity Consumer Discount Co., 898 F.2d 896, 898 (3d Cir. 1990) (quoting Bizier v. Globe Financial Services, 654 F.2d 1, 3 (1st Cir. 1981); see also Johnson, 527 F.2d at 262.

The TILA achieves its remedial goals by a system of strict liability in favor of the consumers when mandated disclosures have not been made. See 15 U.S.C. § 1640(a). A creditor who fails to comply with the TILA in any respect is liable to the consumer under the statute regardless of the nature of the violation or the creditor's intent. Smith, 898 F.2d at 898 (citing Thomka v. A.Z. Chevrolet Inc., 619 F.2d 246, 249-250 (3d Cir. 1980)). "[O]nce the court finds a violation, no matter how technical, it has no discretion with respect to liability." Id. (quoting Grant v. Imperial Motors, 539 F.2d 506, 510 (5th Cir. 1976)); see also Brodo v. Bankers Trust Co., 847 F.Supp. 353, 358 (E.D. Pa. 1994) (recognizing the harshness of the TILA but holding that the court has no discretion with

6

respect to liability once a violation, no matter how technical is found); <u>Vallies v. Sky Bank</u>, 432 F.3d 493, 496 (3d Cir. 2006) (Imposing liability on a lender for lack of disclosure even though it was undisputed that someone else had supplied the information to the consumer holding, "TILA places a clear and affirmative duty on the actual creditor itself to disclose any and all information [material disclosures] and that where the creditor fails to disclose that information, it has violated TILA regardless of the ultimate receipt of the information. Moreover, our conclusion that the TILA requires a single creditor to make disclosures is neither hypertechnical or overly formalistic."); <u>In re Community Bank of Northern Virginia</u>, 418 F.3d 277, 305 (3d Cir. 2005) ("If "material disclosures" are not provided or inaccurately provided, the creditor is strictly liable").

Here, after a careful review of the documents related to the purchase of the 2008 Nissan Rogue, I find that no TILA violation on the part of Defendant Best Buy has been shown. First, Defendant Best Buy made all the mandated and material disclosures for the transaction on the related documents which Ms. Steptoe executed. <u>See</u> 12 C.F.R. § 226.18. On the document entitled "Best Buy Auto Sales," the full price of the used vehicle, the trade allowance of the previous vehicle, the trade payoff, insurance costs, and various fees were plainly delineated. <u>See</u> Document #28-3 at 6, 12. All of the figures shown on the form correctly totaled $12,620.61, the total amount due to the defendant for the transaction. Next, on the document entitled "Pennsylvania Motor Vehicle Installment Sale Contract," the defendant plainly disclosed the annual percentage rate,[2] the finance

---

[2] The annual percentage rate was shown as 21%.

charge,[3] the amount financed,[4] and the total of payments.[5] See Document #28-3 at 13. There were no hidden fees or costs associated with the transaction. Through the figures and explanations on these two documents, Ms. Steptoe was apprised of the terms and amounts of the credit extended to her.

Second, nothing in the record supports Ms. Steptoe's insistent allegation that she was given a trade allowance of $11,000 for her 2010 Nissan Altima. All of the related documents show the trade allowance to be $8,000. See Documents #28-3 at 18-19, 21-22, 31; and #30-1 at 12-14. The full sale price of the vehicle was $16,915.75. Subtracting the trade allowance from the full sale price yields a total of $8,915.75, as shown on the documents. To that sum, the defendant plainly added various fees and insurance costs which total $1,562.26, yielding a total of $10,478.01. From that sum, the defendant then subtracted $857.40 in deposit[6] money resulting in a total of $9,620.61. To that sum, the defendant added $3,000 which is designated on the form as a trade lien/payoff. That calculation brought the total amount due for the purchase of the vehicle to $12,620.61. See Document #28-3 at 6, 12. That figure was conspicuously displayed on several documents bearing Ms. Steptoe's signature.

---

[3] The finance charge, i.e., the dollar amount the credit would cost Ms. Steptoe, was $5,030.19.
[4] The amount of credit provided to Ms. Steptoe was shown as $12,620.61. This amount corresponds to the total found on the "Best Buy Auto Sales" document.
[5] The total of payments, i.e., the amount Ms. Steptoe would have paid after she made all of the scheduled payments, was shown as $17,650.80.
[6] Ms. Steptoe vehemently denies paying this deposit, notwithstanding her signature approving the transaction and its figures which include the deposit. See Documents #28-3 at 6, 7, 12, 13, 16.

Notwithstanding each figure in the calculation of the total amount due being plainly displayed on the documents, Ms. Steptoe insists that Defendant Best Buy inaccurately disclosed the transaction's finance charge by falsely describing a portion of the trade vehicle's value as a $3,000 lien payoff.  She argues that because the $3,000 was not advanced on her behalf to pay a lien on the trade vehicle, but was instead payment by Defendant Best Buy to her for a portion of the trade's value, it should not have been treated as an extension of credit.  Unfortunately for Ms. Steptoe, not only is there nothing in the record to support a trade-in value of $11,000 for the 2010 Nissan Altima, there is also nothing in the record to support her allegation that the $3,000 check she was given represented part of that trade-in value.  Her own unsupported allegation is insufficient under Rule 56 of the Federal Rules of Civil Procedure.  See Fed.R.Civ.P. 56(c) (a party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact).  Instead, Ms. Steptoe's allegations are unsupported by facts, affidavits, deposition transcripts, admissions or any other factor upon which the court could reasonably rely in making a determination of the merits of her motion.

I must also note that Ms. Steptoe's allegations concerning the $3,000 check are also presumptively inadmissible under the parol evidence rule.  The parol evidence rule

in Pennsylvania provides that "[a]ll preliminary negotiations, conversations, and verbal agreements are merged in and superseded by the subsequent written contract . . . and its terms and agreements cannot be added to nor subtracted from by parol evidence." Yocca v. Pittsburgh Steelers, 578 Pa. 479, 854 A.2d 425, 436 (Pa. 2004). For the rule to apply, there must be a writing that "represents the entire contract between the parties." Id. An agreement is deemed to be the entire contract "if it appears to be a contract complete within itself, couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the [parties'] engagement." Id. Here, the contract between Ms. Steptoe and Defendant Best Buy purports to be the entire agreement between the parties. Thus, any preliminary negotiations, conversations, and verbal agreements are considered merged in and superseded by the subsequent written contract and its terms cannot be added to or subtracted from by parole evidence. Id. "Where there is a disparity between a written instrument annexed to a pleading and an allegation in the pleading based thereon, the written instrument will control." ALA, Inc. v. CCAIR, Inc., 29 F.2d 855, 859 n.8 (3d Cir. 1994); see also N. Ind. Gun and Outdoor Shows, Inc. v. City of South Bend, 163 F.3d 449, 454 (7th Cir. 1998) (It is a well-settled rule that when a written instrument contradicts allegations in the pleading to which it is attached, the exhibit trumps the allegations).

Ms. Steptoe bases her TILA claim on her allegation that the $3,000 check was improperly characterized on the Retail Installment Sales Contract signed by the parties as a lien payoff rather than as a payment made directly to Ms. Steptoe as part of the trade-in

10

value.  This allegation without the required support is insufficient here, and cannot sustain her motion for partial summary judgment.

In conclusion, Ms. Steptoe purchased a vehicle from Best Buy on August 5, 2014, and failed to make any payments pursuant to the contract.  She accepted a check in the amount of $3,000 from Defendant Best Buy, and later cashed it without using any of it to pay down the loan.  Ms. Steptoe insists that the $3,000 was part of the trade-in value of her 2010 Nissan Altima.  Defendant Best Buy vehemently disagrees.  The executed documents, which control, reveal that the $3,000 was to be used to pay off a previous loan on the Altima.  Because of this issue of material fact concerning the $3,000, partial summary judgment on this claim is inappropriate.  Accordingly, I will deny the motion.

An appropriate Order follows.